IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| HENDERSON PARKS, LLC, | ) | |
| | ) | |
| Plaintiff, | ) | No. 23 C 13762 |
| | ) | |
| v. | ) | Judge Jeffrey I. Cummings |
| | ) | |
| FEDERAL BUREAU OF PRISONS, | ) | |
| | ) | |
| Defendant. | ) | |

**MEMORANDUM OPINION AND ORDER**

Plaintiff Henderson Parks, LLC ("Henderson") brings this action against defendant the Federal Bureau of Prisons ("BOP") pursuant to the Freedom of Information Act ("FOIA"), 5 U.S.C. §551 *et seq*.[1]  According to Henderson, BOP violated FOIA when it failed to respond to Henderson's FOIA request in a timely manner and wrongfully withheld and redacted responsive records.  Currently before the Court are the parties' cross motions for summary judgment, (Dckt. #22 & #25), and cross-responses, (Dckt. #30 & #32).[2]  For the reasons set forth below, plaintiff's motion for summary judgment, (Dckt. #25), is denied and defendant's motion for summary judgment, (Dckt. #22), is granted.

---

[1] The Court has jurisdiction pursuant to 28 U.S.C. §1331.

[2] The filings related to the cross-motions include: defendant's motion for summary judgment, (Dckt. #22), brief in support thereof, (Dckt. #23), and Local Rule 56.1 statement of material facts ("DSOF"), (Dckt. #24); plaintiff's motion for summary judgment, (Dckt. #25), brief in support (Dckt. # 26), and Local Rule 56.1 statement of material facts ("PSOF"), (Dckt. #27); defendant's response brief, (Dckt. #30), and response to the PSOF ("PSOF Resp."), (Dckt. #31); plaintiff's response brief, (Dckt. #32), and response to the DSOF ("DSOF Resp."), (Dckt. #33).  By agreement, the parties waived the filing of reply briefs unless requested by the Court.  (Dckt. #18 at 1).

1

I.      LEGAL STANDARD FOR SUMMARY JUDGMENT[3]

Summary judgment is appropriate when the moving party shows "that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247 (1986), *quoting* Fed.R.Civ.P. 56(c); *see* Fed.R.Civ.P. 56(a); *see also Hummel v. St. Joseph Cnty. Bd. of Comm'rs*, 817 F.3d 1010, 1016 (7th Cir. 2016). "A genuine dispute is present if a reasonable jury could return a verdict for the nonmoving party, and a fact is material if it might bear on the outcome of the case." *Wayland v. OSF Healthcare Sys.*, 94 F.4th 654, 657 (7th Cir. 2024); *FKFJ, Inc. v. Village of Worth*, 11 F.4th 574, 584 (7th Cir. 2021) (the existence of a factual dispute between the parties will not preclude summary judgment *unless* it is a genuine dispute as to a material fact); *Hottenroth v. Village of Slinger*, 388 F.3d 1015, 1027 (7th Cir. 2004) (issues of material fact are material if they are outcome determinative).

When the moving party has met that burden, the non-moving party cannot rely on mere conclusions and allegations to concoct factual issues. *Balderston v. Fairbanks Morse Engine Div. of Coltec Indus.*, 328 F.3d 309, 320 (7th Cir. 2003). Instead, it must "marshal and present the court with the evidence [it] contends will prove [its] case." *Goodman v. Nat. Sec. Agency, Inc.*, 621 F.3d 651, 654 (7th Cir. 2010); *Lewis v. CITGO Petroleum Corp.*, 561 F.3d 698, 704 (7th Cir. 2009). Thus, a mere "scintilla of evidence" supporting the non-movant's position does not suffice; there must be evidence on which the jury could reasonably find for the non-moving party. *Anderson*, 477 U.S. at 248. Ultimately, summary judgment is granted only if "no reasonable trier of fact could find in favor of the non-moving party." *Hoppe v. Lewis Univ.*, 692 F.3d 833, 838 (7th Cir. 2012) (quotations and citation omitted).

---

[3] The standard for summary judgment remains unchanged on cross-motions for summary judgment. *Blow v. Bijora, Inc.*, 855 F.3d 793, 797 (7th Cir. 2017).

## II.   FACTS

The following facts are undisputed unless otherwise noted.  Henderson Parks LLC is an Illinois law firm that represented Terrance Lamar Johnson ("Johnson") in connection with a criminal matter in this District (Case No. 19-CR-831).  PSOF ¶5.  Johnson pled guilty and, on or about September 27, 2021, the District Court Judge sentenced Johnson to 66 months in BOP.  *Id.* at ¶6.  Johnson was assigned to United States Penitentiary Big Sandy in Inez, Kentucky to serve his sentence.  *Id.* at ¶7.  According to Henderson, Johnson feared for his safety at Big Sandy.  *Id.* at ¶8.

On July 2, 2022, Johnson died at Big Sandy as a result of a physical altercation among inmates.  DSOF ¶6.  BOP investigated the incident and referred the matter to the FBI.  *Id.* Ultimately, the FBI declined to bring any criminal charges relating to the incident.  *Id.*

On November 2, 2022, Henderson submitted a FOIA request to BOP, requesting:

> Any and all documents in your possession concerning the investigation of and into the death of inmate Terrance Johnson (Register Number: 54653-424; DOB: 06/20/85) on or about July 2, 2022, while in the custody of the Bureau of Prisons at USP Big Sandy, including copies of any autopsy examinations or reports, photographs, audio and/or video recordings, witness interviews and/or statements, investigation reports, and communications about Mr. Johnson and the circumstances of his death and the events leading up to his death.

DSOF. ¶7.

In a letter dated November 7, 2022, BOP acknowledged receipt of the FOIA request, and advised Henderson that the request was assigned to the "Complex" processing track and would take significantly longer to process than the timeframe provided for under FOIA.  *Id.* at ¶8.  BOP expressly extended its statutory response time by ten additional days (for a total response time of thirty business days) and assigned Henderson's request to BOP's Mid-Atlantic Regional Office,

which transmitted the request to Big Sandy. *Id*. at ¶9; PSOF ¶12. It is undisputed that BOP did not respond to Henderson's request within thirty days. PSOF ¶13.

Henderson continued to contact BOP regarding the status of its FOIA request and to ask that the request be expedited. PSOF ¶ 14. Although BOP agreed to expedite the request, it did not provide any update as to when Henderson would receive a determination letter or responsive documents. *Id*. at ¶15. On September 15, 2023 – still having received no response – Henderson initiated this lawsuit with a one-count complaint alleging that BOP violated FOIA by failing to provide a timely response. DSOF ¶12; (Dckt. #1). Henderson properly served BOP on October 30, 2023. PSOF ¶17.

On November 15, 2023, BOP provided its determination letter and produced responsive documents to Henderson. PSOF ¶18. According to BOP, Big Sandy's search of its Special Investigative Services ("SIS") office and its TRUINTEL database resulted in 1509 pages of responsive records, including e-mails, notes, memoranda, and other investigative materials. DSOF ¶¶9-11. Of those 1509 pages, BOP released 81 pages of records in full, released 708 pages of records in part, and withheld 580 pages in their entirety. *Id*. at ¶13.[4] The documents BOP produced included a partially redacted inmate investigative report summarizing the incident in question, a partially redacted report from the county coroner (including a death certificate and autopsy report), and a partially redacted version of 417 pages of Johnson's e-mail correspondence. *Id*. at ¶13. In support of its redactions and withheld documents, and as explained in more detail below, BOP relied on the following FOIA exemptions: 5 U.S.C. §552(b)(5), (b)(6), (b)(7)(C), (b)(7)(E), and (b)(7)(F). PSOF ¶19.

---

[4] According to the BOP, it withheld the remaining 140 pages (which consisted of presentence reports of Big Sandy inmates generated by probation officers) as non-agency records. DSOF ¶¶13, 15.

Following BOP's production of documents, Henderson amended its complaint on December 15, 2023 to add a second count asserting that BOP further violated FOIA by wrongfully redacting and/or withholding responsive documents.  DSOF ¶14; (Dckt. #14).

On February 12, 2024, following discussions between counsel, BOP produced a minimally redacted version of the previously produced (and more heavily redacted) inmate investigative report that summarized the investigation into Johnson's death.  DSOF ¶23 & Ex. 1. The parties agree that the investigative report summarizes interviews with inmates who were involved in the incident, how the incident started and what was said, and the steps the BOP officials took in order to investigate the incident.  *Id.* at ¶24.

The parties attempted to resolve this matter without court intervention, (*see* Dckt. #20), but those attempts fell short and the instant cross-motions for summary judgment followed.

III.    ANALYSIS

In their cross-motions, both parties seek judgment in their favor as to both counts of plaintiff's amended complaint.  According to plaintiff, BOP violated FOIA initially by failing to provide a timely response to its request (Count I) and subsequently by improperly redacting and/or withholding responsive documents (Count II).  For its part, BOP argues that its untimely response does not alone warrant judgment in plaintiff's favor and that it has met its burden to support its redactions and withholdings under the appropriate FOIA exemptions.  The Court agrees with BOP as to both counts.

A.    **The Purpose Behind the Freedom of Information Act.**

"The basic purpose of FOIA is to ensure an informed citizenry, vital to the functioning of a democratic society, needed to check against corruption and to hold the governors accountable to the governed." *NLRB v. Robbins Tire & Rubber Co.*, 437 U.S. 214, 242 (1978); *Rubman v.*

*U.S. Citizenship & Immigr. Servs.*, 800 F.3d 381, 386 (7th Cir. 2015) (same). As such, FOIA

provides that agencies[5] "shall make . . . records promptly available to any person" who submits a

request that "(i) reasonably describes such records and (ii) is made in accordance with [the

agency's] published rules." 5 U.S.C. §552(a)(3)(A). Nonetheless, "Congress has structured

various exemptions from the FOIA's disclosure requirements in order to protect certain interests

in privacy and confidentiality." *Solar Sources, Inc. v. United States*, 142 F.3d 1033, 1037 (7th

Cir. 1998). The District Court must review an agency's denial of a FOIA request *de novo*, and

the agency bears the burden of justifying its decision to withhold records under the statutory

exemptions. 5 U.S.C. §552(a)(4)(B).

With this purpose and burden in mind, the Court turns to the issues presented by the

parties' motions.

### B.  The BOP's Untimely Response Does Not Alone Warrant Judgment in Plaintiff's Favor.

Upon receipt of a proper FOIA request the agency must "determine within 20 days . . .

whether to comply with such request" and must "immediately notify" the requester of that

decision. 5 U.S.C. §552(a)(6)(A)(i). If the agency determines "that unusual circumstances

apply," it may invoke an additional ten-day extension to make its determination. 5 U.S.C.

§552(a)(6)(B)(i). However, "[i]f an agency, after a lawsuit is filed . . . fulfills an outstanding

FOIA request, the statute does not authorize courts to order any retroactive relief in favor of the

plaintiff, apart from the possible recovery of attorney fees and costs." *Stevens v. United States*

*Dep't of Health & Hum. Servs.*, No. 22 C 5072, 2023 WL 6392407, at *3 (N.D.Ill. Oct. 2, 2023)

(citing *Walsh v. U.S. Dep't of Veterans Affs.*, 400 F.3d 535, 537 (7th Cir. 2005) ("FOIA's citizen

suit provision provides only injunctive relief and has no remedy for cases . . . in which an agency

---

[5] It is undisputed that the BOP is a federal agency subject to FOIA's requirements. PSOF ¶4.

is late in producing the requested records.")).  Instead, "[a]ny person making a request to any agency for records . . . shall be deemed to have exhausted his administrative remedies with respect to such request if the agency fails to comply with the applicable time limit provisions of this paragraph."  5 U.S.C. §552(a)(C)(i).  It follows then that "to prevail on a motion for summary judgment, a plaintiff must show that there is no genuine dispute that []he has *not yet received* records to which []he is entitled because the agency has '(1) improperly; (2) withheld; (3) agency records.'"  *Stevens*, 2023 WL 6392407, at *3, *quoting White v. U.S. Dep't of Just.*, 16 F.4th 539, 543 (7th Cir. 2021).

Here, it is undisputed that BOP invoked a ten-day extension and yet still failed to provide its response within the extended 30-day statutory timeframe.  Indeed, BOP did not provide a response to Henderson's request until November 2023, over a year after it was submitted.  But, as stated above, and as BOP properly asserts, its untimely response is alone insufficient to warrant judgment in Henderson's favor.  *See Stevens*, 2023 WL 6392407, at *3; *Hainey v. U.S. Dep't of the Interior*, 925 F.Supp.2d 34, 42 (D.D.C. 2013) ("While the Court agrees that the Department's responses were untimely under the statute, the Department's untimely responses, in and of themselves, do not entitle [plaintiff] to judgment in her favor.").  Instead, the Court finds – as BOP concedes – that Henderson constructively exhausted its administrative remedies under FOIA, *see* 5 U.S.C. §552(a)(C)(i), and turns to whether BOP has improperly withheld agency records.  *Hainey*, 925 F.Supp.2d at 42 ("[G]iven that the Department has now responded to [plaintiff's] request . . . the only issue for the Court to consider at this point is whether the Department's response complies with its obligations under FOIA.") (emphasis in original). !!!

!

!

### C.    BOP Has Met its Burden to Withhold Certain Responsive Documents.

Again, "FOIA requires a federal agency upon request to disclose records in its possession, subject to nine exemptions." *Enviro Tech Int'l, Inc. v. U.S. E.P.A.*, 371 F.3d 370, 374 (7th Cir. 2004). "[I]n view of the mandate for broad disclosure," the Seventh Circuit has cautioned, "those exemptions are to be construed narrowly." *Id.* For the same reason, the "[g]overnment bears the burden of justifying its decision to withhold the requested information pursuant to a FOIA exemption." *Solar*, 142 F.3d at 1037.

"An agency can carry its burden on summary judgment by submitting affidavits that '(1) describe[s] the withheld documents and the justifications for non-disclosure with reasonably specific detail, (2) demonstrate[s] that the information withheld falls logically within the claimed exemption, and (3) are not controverted by either contrary evidence in the record or by evidence of agency bad faith.'" *White v. Dep't of Just.*, 460 F.Supp.3d 725, 738 (S.D.Ill. 2020), *quoting Kimberlin v. Dep't of Treasury*, 774 F.2d 204, 210 (7th Cir. 1985). Courts "must accord substantial weight to an agency's affidavit" and "[u]ltimately an agency's justification for invoking a FOIA exemption . . . is sufficient if it appears logical or plausible." *ACLU v. C.I.A.*, 710 F.3d 422, 427 (D.C.Cir. 2013) (internal quotations and citations omitted); *see also Baker v. Fed. Bureau of Investigation*, No. 14 C 9416, 2016 WL 7131522, at *2 (N.D.Ill. Dec. 6, 2016), *aff'd*, 863 F.3d 682 (7th Cir. 2017) ("The court, in conducting [its] review, gives "substantial weight" to affidavits from the agency.").

In support of its motion, BOP submitted the affidavit of Kara Christenson, a deputy FOIA chief for BOP's Central Office in Washington, D.C., (Dckt. #24-2), along with a *Vaughn* index describing the redactions and documents withheld under each applicable exemption, (Dckt. #24-3). *See Int'l Union of Elevator Constructors Loc. 2 v. U.S. Dep't of Lab.*, 747 F.Supp.2d 976,

980 (N.D.Ill. 2010) (explaining that "a *Vaughn* index is a comprehensive listing of each withheld document cross-referenced with the FOIA exemption that the Government asserts is applicable.") (internal quotation and citation omitted). On the whole, the Court notes that the Christenson affidavit and accompanying *Vaughn* index are sufficiently detailed and non-conclusory to support BOP's redactions and/or withholdings, and that Henderson has offered little beyond speculation to rebut BOP's position.[6] *See White*, 460 F. Supp. 3d at 738 ("The agency is entitled to a presumption of good faith which cannot be rebutted by mere speculation."). Nonetheless, the Court will address BOP's claimed exemptions and Henderson's objections thereto in turn.[7]

### 1. FOIA Exemptions 6 and 7(C) (Personal Privacy)

Under Exemption 6, an agency can withhold "personnel and medical files and similar files the disclosure of which would constitute a clearly unwarranted invasion of personal privacy." 5 U.S.C. §552(b)(6). In this context, the term "similar files" covers records "on an individual which can be identified as applying to that individual." *Stevens v. Broad. Bd. of Governors*, No. 18-CV-5391, 2023 WL 2428839, at *10 (N.D.Ill. Mar. 9, 2023), *quoting Ayuda, Inc. v. Fed. Trade Comm'n*, 70 F.Supp.3d 247, 264 (D.D.C. 2014). Under Exemption 7(C), an agency can withhold "records or information compiled for law enforcement purposes," to the extent that the production of such documents "could reasonably be expected to constitute an

---

[6] Henderson justifiably took issue with the BOP's *initial Vaughn* index, (*see* Dckt. #27-1), which provided little, if any, specificity as to the application of the claimed exemptions.

[7] Notably, FOIA also requires the agency to conduct an adequate search for responsive documents. *See Rubman*, 800 F.3d at 387 (noting that FOIA requires "a good faith effort to conduct a search for the requested records, using methods which can be reasonably expected to produce the information requested."). Here, however, Henderson has not taken issue with the adequacy of the BOP's search methods in either its own motion or in response to the BOP's motion, thereby waiving any such objection. *See M.G. Skinner & Assocs. Ins. Agency, Inc. v. Norman-Spencer Agency, Inc.*, 845 F.3d 313, 321 (7th Cir. 2017). Even still, the Court finds that the Christenson affidavit supports a finding that the BOP made a good faith effort to conduct the search, using methods reasonably expected to produce the requested information. (*See* Dckt. #24-2 at ¶11).

unwarranted invasion of personal privacy." 5 U.S.C. §552(b)(7)(C). As BOP properly notes, Exemption 7(C) "provides broader privacy protections than Exemption 6." *Jackson v. U.S. Dep't of Just.*, 596 F.Supp.3d 1119, 1124 (N.D.Ill. 2022) (citing *U.S. Dep't of Justice v. Reps. Comm. For Freedom of Press*, 489 U.S. 749, 755-756 (1989)). Thus, courts typically focus their analysis on the more protective terms of Exemption 7(C). *Rimmer v. Holder*, 700 F.3d 246, 256 (6th Cir. 2012).

A threshold requirement under Exemption 7(C) (and under Exemptions 7(E) and 7(F), discussed *infra* at Section III.C.2.), is that the records were "compiled for law enforcement purposes." 5 U.S.C. §552(b)(7). "Courts have generally interpreted Exemption 7 as applying to records that pertain to specific investigations conducted by agencies, whether internal or external, and whether created or collected by the agency – in other words, investigatory files." *Families for Freedom v. U.S. Customs & Border Prot.*, 797 F.Supp.2d 375, 397 (S.D.N.Y. 2011). It is well established that BOP is considered a law enforcement agency – and its employees law enforcement officers – for purposes of FOIA, *see e.g., Gabrion v. United States Dep't of Just.*, No. 2:15-CV-24-WTL-DKL, 2016 WL 5121987, at *5 (S.D.Ind. Sept. 21, 2016) (citing 18 U.S.C. §404(a)(2) & 5 U.S.C. §8401(17)(D)(i)), and BOP has established through the Christenson affidavit that the documents at issue were "created to investigate the death of Terrance Johnson pursuant to its law enforcement mission of protecting inmates, staff, and the community." (Dckt. # 24-2 at ¶18). *See Mingo v. U.S. Dep't of Just.*, 793 F.Supp.2d 447, 453 (D.D.C. 2011) (holding Exemption 7's threshold law enforcement requirement was satisfied where the responsive records pertained to the BOP's investigation of an altercation involving over 50 inmates at Big Sandy).

10

To determine whether disclosing information "could reasonably be expected to constitute an unwarranted invasion of personal privacy," under Exemption 7(C), the Court is "required to balance the privacy interests against the public interests related to the release of a record." *Jackson*, 596 F.Supp.3d at 1124. As the Seventh Circuit has explained, "[s]o long as the government has shown enough of a protected privacy interest to invoke the exemption in the first place, the burden shifts to the person seeking disclosure to demonstrate that there is some significant public interest that the court must balance against those privacy interests." *Higgs v. U.S. Park Police*, 933 F.3d 897, 904 (7th Cir. 2019).

Here, a review of the *Vaughn* index reveals that BOP relied on Exemption 7(C) (asserted in conjunction with Exemption 6) to withhold the names, initials, register numbers, contact information, photos, e-mails, sentencing information and/or medical records of BOP staff members, other inmates, and/or other third-parties, the "disclosure of which would constitute an unwarranted invasion of personal privacy." (*See generally* Dckt. #24-3).

Such personally identifiable information and medical records related to the investigation of Johnson's death are protected under Exemption 7(C).[8] *See Jackson*, 596 F.Supp.3d at 1124 ("Personally identifiable information within law enforcement records is protected under Exemption 7(C)."); *Schrecker v. U.S. Dep't of Just.*, 349 F.3d 657, 661 (D.C. Cir. 2003) ("[O]ur

---

[8] Notably, Henderson does not take issue with the redaction of names and personally identifying information but contends that the BOP has relied on Exemptions 6 and 7(C) to improperly withhold *entire* documents instead of simply redacting the appropriate information. (*See* Dckt. #32 at 3). But Henderson's argument in this regard appears to reflect a misinterpretation of the Christenson affidavit and accompanying *Vaughn* index. For example, citing the Christenson affidavit, Henderson implies that the BOP has withheld 458 pages in whole solely under Exemptions 6 and 7(C) to redact personal identifying information. (Dckt. #24-2 at ¶¶15, 22). Based on the Court's review of the *Vaughn* index, however, the BOP has either: (1) withheld many pages only in part under Exemptions 6 and 7(C); (2) supported withholding pages in their entirety under these Exemptions (*e.g.* medical records, messaging history); and/or (3) cited to additional exemptions (such as 7(E) and 7(F)) to support withholding certain documents in their entirety. The Court finds these actions proper.

decisions have consistently supported nondisclosure of names or other information identifying

individuals appearing in law enforcement records, including investigators, suspects, witnesses,

and informants."); *Big Ridge, Inc. v. Fed. Mine Safety & Health Rev. Comm'n*, 715 F.3d 631,

651 (7th Cir. 2013) ("Absent extraordinary circumstances, it would be a violation of . . . privacy

if the records were revealed beyond the agency, [because such] medical or personnel information

would not advance public transparency of the [agency's] operations"); *Lakin Law Firm, P.C. v.*

*F.T.C.*, 352 F.3d 1122, 1124 (7th Cir.2003) ("[P]ersonal identifying information is regularly

exempt from disclosure. And that is as it should be, for the core purpose of the FOIA is to

expose what the government is doing, not what its private citizens are up to.").

Thus, BOP has presented a reasonable basis for the articulated privacy interests to invoke

Exemption 7(C), and the burden shifts to Henderson to present a significant public interest to

balance against those privacy interests.

To attempt to meet this burden, Henderson asserts – without citation to supporting

authority – that the interest of the "public in ensuring and monitoring the safety of fellow citizens

who are incarcerated, and BOP's response to incidents involving inmate safety, is substantial"

and outweighs any conceivable privacy concerns asserted by BOP. (Dckt. #32 at 4-5). While

the Court certainly agrees that there is a public interest in protecting inmates, Henderson has not

demonstrated, beyond mere conjecture, that the information it seeks here regarding BOP's

investigation into Johnson's death is "likely to advance that [public] interest" particularly beyond

its *own* use for the information. *Nat'l Archives & Recs. Admin. v. Favish*, 541 U.S. 157, 172

(2004); *Jackson*, 596 F.Supp.3d 1126 (the requester "must show that the public interest sought to

be advanced is a significant one, an interest more specific than having the information for its

own sake."); *see also Higgs*, 933 F.3d at 905 (holding that a requester's belief that disclosure

would reveal "much about the diligence of the agency's investigation" was insufficient to advance a significant public interest that outweighed privacy interests). As such, Henderson has failed to sufficiently present a public interest that outweighs the privacy interests invoked by BOP.

### 2. FOIA Exemptions 7(E) and 7(F) (Law Enforcement Purposes)

Under Exemption 7(E), the agency can withhold documents compiled for law enforcement purposes, to the extent that the production of such documents "would disclose techniques and procedures for law enforcement investigations or prosecutions, or would disclose guidelines for law enforcement investigations or prosecutions if such disclosure could reasonably be expected to risk circumvention of the law." 5 U.S.C. §552(b)(7)(E). This exemption sets a "relatively low bar" for an agency to "withhold information from disclosure where releasing such information would provide insight into its investigatory or procedural techniques." *Berard v. Fed. Bureau of Prisons*, 209 F.Supp.3d 167, 176 (D.D.C. 2016) (internal quotations and citations omitted). Moreover, as BOP notes, Exemption 7(E) permits withholding "not just for circumvention of the law, but for a risk of circumvention; not just for an actual or certain risk of circumvention, but for an expected risk; not just for an undeniably or universally expected risk, but for a reasonably expected risk; and not just for certitude of a reasonably expected risk, but for the chance of a reasonably expected risk." *Mayer Brown LLP v. I.R.S.*, 562 F.3d 1190, 1193 (D.C.Cir. 2009).

As for Exemption 7(F), it permits withholding of documents compiled for law enforcement purposes that, if disclosed, "could reasonably be expected to endanger the life or physical safety of any individual." 5 U.S.C. §552(b)(7)(F). This exemption "affords broad protection to the identities of individuals mentioned in law enforcement files, including any

13

individual reasonably at risk of harm." *Berard*, 209 F.Supp.3d at 174 (internal citations and quotations omitted).

Here, as set forth in the Christenson affidavit and *Vaughn* index, BOP has withheld certain information and documents under Exemptions 7(E) and 7(F), including, *inter alia*, information supporting classification assignments related to the Central Inmate Monitoring program and separation of inmates; the daily operations of USP Big Sandy, including security protocols; techniques and procedures for gathering evidence and investigating incidents; photographs reflecting the security perimeter around Big Sandy and inmate made weapons; and names of individuals involved in the investigation into Johnson's death. (*See* Dckt. #24-2 at ¶¶23-27; Dckt. #24-3). The Court affords BOP's affidavit substantial weight, as it must, and finds that BOP has properly invoked Exemptions 7(E) and 7(F).

As the Court explained in *White*, some of the redacted and withheld information here:

> [I]s the type of information the BOP must monitor to keep inmates, staff, and the public safe because it is related to interpersonal and intergroup dynamics within the prison. Knowing who is involved in certain incidents, who has a history of animosity toward others, and who is affiliated with groups that have displayed animosity toward each other is critical to maintaining safety and order within the institution. This type of information is also subject to abuse or exploitation if it is used for other purposes and may reveal and endanger the prison's confidential sources for some of that information.

460 F.Supp.3d at 781 (applying Exemption 7(F)). The *White* court further acknowledged the propriety of BOP withholding documents under Exemption 7E where – as here – they concern: "information about the BOP's sources of information and methods of acquiring it," "the methods for ascertaining threats to inmate safety," "the BOP's assessment of and responses to potential

institutional threats or disruptive activities; and the types of security personnel and equipment available on housing ranges."[9] *Id*.

Similarly, the BOP has properly invoked Exemption 7(F) to further support withholding the names of the individuals involved in the investigation into Johnson's death. *See Brady-Lunny v. Massey*, 185 F.Supp.2d 928, 932 (C.D.Ill. 2002) (acknowledging that "[r]isks such as [those protected under Exemption 7(F)] are always present in inmate populations given inmates' gang ties, interest in escape, and motive for violence against informants and rivals. If the Government was forced to disclose inmates' names, security issues in any one of these areas would abound.").

### 3. FOIA Exemption 5

Exemption 5 authorizes an agency to withhold "inter-agency or intra-agency memorandums or letters that would not be available by law to a party other than an agency in litigation with the agency." 5 U.S.C. § 552(b)(5). As the Seventh Circuit has explained, "we have understood this exemption to apply to documents that would be privileged in the government's litigation against a private party . . . meaning it encompass the attorney work product, attorney client, and deliberative process privileges." *Vidal-Martinez v. U.S. Dep't of Homeland Sec.*, 84 F.4th 743, 748 (7th Cir. 2023) (internal citations and quotations omitted). Relevant here is the deliberative-process privilege, which protects "documents reflecting the deliberative or policy-making processes of governmental agencies." *Enviro Tech*, 371 F.3d at 374. The deliberative process privilege distinguishes between "predecisional, deliberative

---

[9] The Court distinguishes this case from *Raher v. Fed. Bureau of Prisons*, No. CV-09-526-ST, 2011 WL 2014875, at *9 (D.Or. May 24, 2011), relied on by plaintiff for the proposition that disclosure of security electronics, security inspection systems, and staffing vulnerabilities are not enforcement functions protected under Exemption 7(E). In that case, unlike here, the court held that BOP failed to show how that information pertained to its law enforcement functions.

15

documents, which are exempt from disclosure, and documents reflecting a final agency decision and the reasons supporting it, which are not." *U.S. Fish & Wildlife Serv. v. Sierra Club*, Inc., 592 U.S. 261, 262, (2021). "Documents are 'predecisional' if generated before the agency's final decision, and 'deliberative' if prepared to help the agency formulate its position." *Stevens*, 2023 WL 2428839, at *12, *quoting U.S. Fish and Wildlife*, 592 U.S. at 262.

Here, in the Christenson affidavit and *Vaughn* index, BOP explained that it withheld portions of three documents (and one page in full) under Exemption 5. (*See* Dckt. #24-3 at 5, 12-13 & 25). BOP asserts that the withheld portions of those documents contain "a recommendation by an employee of a federal agency" following the investigation, namely: (1) the conclusions drawn; (2) recommendations made by staff regarding housing proposals for the involved inmates; and (3) the manner in which staff manage the orderly running of the institution. (Dckt. #24-2 ¶¶28-29; Dckt. #24-3). Henderson objects, arguing that BOP has failed to properly show that the withheld documents are protected under the deliberative process privilege. The Court disagrees.

As set forth in the Christenson Affidavit – to which the Court must accord substantial weight – and the accompanying *Vaughn* affidavit, the withheld documents reflect the non-final, predecisional, and deliberative recommendations of staff members regarding the Agency's policies for the housing of inmates. Contrary to Henderson's position, such documents were properly withheld under the deliberative process privilege pursuant to Exemption 5. *See Donham v. U.S. Forest Serv.*, No. 07-CV-111-MJR, 2008 WL 2157167, at *4 (S.D.Ill. May 21, 2008) (noting that Exemption 5 has been construed to include "all papers which reflect the agency's group thinking in the process of working out its policy and determining what its law shall be.") (cleaned up); *Competitive Enter. Inst. v. U.S. Dep't of State*, 486 F.Supp.3d 171, 183

16

(D.D.C. 2020); *Machado Amadis v. U.S. Dep't of State*, 971 F.3d 364, 370 (D.C. Cir. 2020) ("a recommendation does not lose its predecisional or deliberative character simply because a final decisionmaker later follows or rejects it without comment.").[10] !

### D.       Plaintiff's Request for *In Camera* Review is Denied.

Henderson asks the Court to conduct an *in camera* review of the redacted and withheld documents.  Henderson is indeed correct that pursuant to FOIA, a court "*may* examine the contents of such agency records in camera to determine whether such records or any part thereof shall be withheld under any of the exemptions."  5 U.S.C. §552(a)(4)(B) (emphasis added); *Robbins Tire*, 437 U.S. at 224 ("The *in camera* review provision is discretionary by its terms."). However, "[p]recedent holds that a district court may 'deny[ ] in camera review of records when affidavits submitted by the Government (1) describe the withheld documents and the justifications for non-disclosure with reasonably specific detail, (2) demonstrate that the information withheld falls logically within the claimed exemption, and (3) are not controverted by either contrary evidence in the record or by evidence of bad faith.'"  *Erwin v. U.S. Dep't of State*, No. 11 C 6513, 2013 WL 6452758, at *2 (N.D.Ill. Dec. 9, 2013), *quoting Silets v. U.S. Dep't of Justice*, 945 F.2d 227, 229 (7th Cir. 1991); *see also White*, 460 F.Supp.3d at 738 ("The Court has discretion to review documents . . . *in camera* but is not required to do so where the agency has submitted a sufficient affidavit.").  "Another crude, albeit important, factor to be considered is the number of withheld documents." *Quinon v. FBI*, 86 F.3d 1222, 1228 (D.C.Cir. 1996).

---

[10] Notwithstanding BOP's proper reliance on Exemption 5, when BOP describes two of the four withheld documents, it also articulates that disclosure of the deliberative information "could pose a risk to internal issues of safety and security," thereby further implicating the protection of Exemption 7(F).  (*See* Dckt. #24-3 at 5, 12-13).

Here, for the reasons outlined above, BOP properly supported its claimed exemptions with the Christenson affidavit and *Vaughn* index, and the Court found no contrary evidence in the record or evidence of bad faith on the part of BOP. Furthermore, the fact that hundreds of documents are at issue here weighs against an *in camera* review. *Quinon*, 86 F.3d at 1228; *Cf. Carter v. U.S. Dep't of Commerce*, 830 F.2d 388, 393 (D.C.Cir. 1987) ("when the requested documents 'are few in number and of short length,' *in camera* review may save time and money."). The Court further notes that "an *in camera* review should not be resorted to as a matter of course, simply on the theory that 'it can't hurt.'" *Id.* For these reasons, the Court exercises its discretion to deny Henderson's request for *in camera* review.

   **E.**  **Plaintiff's Request for Release of the Documents under an Attorney's Eyes-Only Provision is Denied.**

In its submissions, Henderson has also asked the Court to order BOP to release the withheld documents to Henderson on an "attorney's eyes-only basis." That request is denied. First, plaintiff has offered no authority to support its position that documents can be released on an attorney's eyes-only basis under FOIA. Moreover, even if such a procedure were available under FOIA, it would not be appropriate here because the release of records to the attorneys (who work at the plaintiff's law firm) would be tantamount to a release to the plaintiff law firm itself. Indeed, as BOP argues, such a disclosure in this matter – where the attorneys *are* part of the plaintiff – would defeat the purpose behind FOIA and result in a *de facto* judgment in plaintiff's favor notwithstanding the Court's findings outlined in this Opinion. *See generally Solar*, 142 F.3d. at 1041 ("[T]he general rule is that counsel are not entitled to participate in in camera FOIA proceedings.").

18

## CONCLUSION

For the foregoing reasons, plaintiff's motion for summary judgment, (Dckt. #25), is

denied and defendant's motion for summary judgment, (Dckt. #22), is granted.

**Date: April 26, 2024**

**Jeffrey I. Cummings**
**United States District Court Judge**